**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MAX LIGHTFOOT,** | CASE NO. 18-cv-07123-YGR |
| Plaintiff, | |
| vs. | **ORDER GRANTING MOTION TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS** |
| **MONEYONMOBILE, INC., ET AL.,** | Re: Dkt. No. 54 |
| Defendants. | |

Now before the Court is defendants' motion to transfer the action to the United States District Court for the Northern District of Texas. (Dkt. No. 54 ("Mot.").) Defendants bring this motion pursuant to 28 U.S.C. section 1404(a), on the ground that the action is governed by a forum selection clause, in which the parties agreed to litigate related disputes in the federal and state courts located in Dallas County, Texas. Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **GRANTS** defendants' motion to transfer.[1]

## I.     SUMMARY OF FACTS

Plaintiff Max Lightfoot is a 76-year-old man residing at an elder care facility in San Francisco, California. (Dkt. No. 58 ("Lightfoot Decl.") ¶¶ 3-4.) In December 2016, plaintiff was diagnosed with a rare and aggressive neurological disease that impairs his mobility and causes him significant pain. (*Id.* ¶¶ 11-15, Ex. 1.)

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion appropriate for decision without oral argument.

On April 26, 2019, plaintiff filed the first amended complaint in this action, bringing claims against MoneyonMobile.com ("MOMT") and four of its officers and directors. (Dkt. No. 51 ("FAC") ¶¶ 21-25.)[2] Plaintiff's claims center around his investment in and subsequent transactions with MOMT between 2017 and 2018. As is relevant here, plaintiff executed three sets of transactions with MOMT during this period:

First, plaintiff lent $700,000 to MOMT under the terms of three secured promissory notes dated May 2, 2017, June 15, 2017, and August 8, 2017. (FAC ¶ 38; *id.*, Exs. 8, 9, 10.) Each of the promissory notes contained the following forum selection clause:

> Governing Law. This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, excluding conflict of laws principles that would cause the application of laws of any other jurisdiction. Any action brought to enforce or interpret this Note shall be brought in the courts located in Dallas County, Texas.

(*Id.*, Ex. 8, at ¶ 13; *Id.* at Ex. 9, ¶ 13; *Id.* at Ex. 10, ¶ 13.)

Second, on January 29, 2018, plaintiff executed a conversion agreement through which he exchanged the secured promissory notes for shares of MOMT's Series G preferred stock. (*Id.* ¶ 41.) Like the promissory notes, the conversion agreement contained a forum selection clause:

> Governing Law; Jurisdiction; Jury Trial. . . . Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of Dallas, Dallas County, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.

(*Id.*, Ex. 11, ¶ 7.1.) The conversion agreement, by its terms, superseded the earlier promissory notes. (*Id.*, Ex. 11, ¶ 7.5 ("This Agreement supersedes all other prior oral and written agreements between the Investor, the Company, their affiliates and persons acting on their behalf with respect to the matters covered herein . . . .").)

Third, on May 10, 2018, plaintiff agreed to convert his shares of preferred stock into

---

[2] MOMT is a Texas corporation, and each of the individual defendants is a citizen of Texas. (FAC ¶¶ 21-25.)

MOMT common stock.  (*Id*. ¶ 42.)  In connection with the transaction, plaintiff signed a notice of conversion.  (*Id*.)  The notice made no express alterations or modifications to plaintiff's prior agreements with MOMT.  (*Id*., Ex. 13.)

Plaintiff alleges that in deciding to invest in MOMT, he relied upon false and misleading statements by MOMT regarding its relationship with an Indian company called My Mobile Payments Limited (MMPL).  (*Id*. ¶¶ 3, 18.)  Specifically, plaintiff alleges that MOMT misrepresented in public filings that MMPL was MOMT's subsidiary and that MMPL's revenue and operations could be consolidated with MOMT's.  (*Id*. ¶¶ 3-5.)  Plaintiff further alleges that MOMT hired Ankit Sahu, plaintiff's long-time financial advisor, and used Mr. Sahu as a conduit for passing along misrepresentations and persuading plaintiff to invest in MOMT.  (*Id*. ¶¶ 35-36.)

On August 23, 2018, after MOMT's auditors resigned and MOMT disclosed that MMPL employees had been forced to join a newly-formed entity in which MOMT had no interest, MOMT's stock price fell 97.4% in a single day.  (*Id*. ¶¶ 5, 7.)  Plaintiff claims that defendants' actions leading up to the stock drop cost him his life's savings and hundreds of thousands of dollars in profits.  (*Id*. ¶ 15.)

Plaintiff brings claims for, among other things, elder abuse, violations of the federal securities laws, and violations of the California Corporations Code arising out of his transactions with MOMT.  (*Id*. ¶¶ 62-135.)

## II.    LEGAL STANDARD

MOMT brings this motion pursuant to 28 U.S.C. section 1404(a), seeking to transfer this action to the Northern District of Texas based upon a forum selection clause contained in the conversion agreement.[3]  Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

---

[3]  Defendant argues, and plaintiff does not dispute, that the Court need only analyze the forum selection clause contained in the conversion agreement to determine whether this case is proper for transfer.  (Mot. at 5.)  Given that there is no dispute as to which agreement applies, and because the conversion agreement expressly superseded the earlier promissory notes and was not altered by the notice of conversion, the Court looks to the forum selection clause in the conversion agreement for purposes of the present motion.  (*See* FAC, Ex. 11, ¶¶ 7.1, 7.5; *id*. Ex. 13.)

The statute "does not condition transfer on the initial forum's being 'wrong' . . . [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co., Inc. v. United States District Court*, 571 U.S. 49, 59 (2013) ("*Atlantic Marine*").

When analyzing whether transfer is appropriate pursuant to a forum selection clause, the Court is "bound by the Supreme Court's direction in *Atlantic Marine*." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018). Under *Atlantic Marine*, "a district court should ordinarily transfer the case to the forum specified in [the] [forum selection] clause." *Atl. Marine*, 571 U.S. at 62. Unlike cases in which there is no forum selection clause, the plaintiff's choice of forum merits "no weight," and instead, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unreasonable. *Id*. at 63. The "practical result" of *Atlantic Marine*'s holding is that that a forum selection clause should control except "under extraordinary circumstances unrelated to the convenience of the parties." *Sun*, 901 F.3d at 1088 (quoting *Atl. Marine*, 571 U.S. at 62).

Because *Atlantic Marine* "provides little guidance [] regarding what constitutes an 'exceptional reason' or 'extraordinary circumstances' in which courts should not give controlling weight to a valid forum-selection clause," the Court must look to the Supreme Court's prior guidance on this issue. *Id*. (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). Under *M/S Bremen*, a forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen*, 407 U.S. at 10. Enforcement of a forum selection clause is "unreasonable" if:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (quoting *M/S Bremen*, 407 U.S. at 10) (internal quotations and citations omitted). In determining whether enforcement of a forum selection clause would be unreasonable, the Court may consider only public interest factors,

4

which "rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 64. Further, the Court "must deem all factors relating to the private interests of the parties (such as the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive') as weighing 'entirely in favor of the preselected forum.'" *Sun*, 901 F.3d at 1087-88 (quoting *Atl. Marine*, 571 U.S. at 64, n.6).

## III.    DISCUSSION

### A.    Validity of Forum Selection Clause

As an initial matter, the Court must determine whether the forum selection clause in the conversion agreement is valid.

Plaintiff argues that the forum selection clause is void on two bases: (1) under section 29(b) of the Securities Exchange Act of 1934, and (2) under section 25701 of the California Corporations Code. (Dkt. No. 57 ("Opp.") at 14-15.)

First, as to section 29(b), that statute provides:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void . . . .

15 U.S.C. § 78cc(b). Plaintiff contends that he was fraudulently induced to purchase MOMT securities, which under section 29(b), renders the agreements to purchase those securities "void" and "unlawful." (Opp. at 14.) Thus, according to plaintiff, the forum selection clause in the conversion agreement is unenforceable.

Plaintiff's contention, at its core, is that the forum selection clause should not be enforced because the conversion agreement in which it appears was procured by fraud. However, as plaintiff himself acknowledges, courts have consistently rejected arguments for a general fraud exception to an otherwise valid forum selection clause. *See Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998) ("[S]imply alleging that one was duped into signing [a] contract is not enough. . . . For a party to escape a forum selection clause on the grounds of fraud, it must show

that the inclusion of that clause in the contract was the product of fraud or coercion.") (quoting *Richards v. Lloyd's of London,* 135 F.3d 1289, 1297 (9th Cir. 1998)) (internal quotations omitted); *Acceler-Ray, Inc. v. IPG Photonics Corp.*, No. 5:16-CV-02352-HRL, 2017 WL 1196835, at *6 (N.D. Cal. Mar. 31, 2017) (same); *Bhari Info. Tech. Sys. Pvt., Ltd. v. Allied Bos. Bank Inc.*, No. C 05-01223 SI, 2005 WL 3481473, at *3 (N.D. Cal. Dec. 20, 2005) (same). Plaintiff may not circumvent well-established law simply by dressing up an allegation of fraud as a violation of section 29(b) in order to avoid enforcement of an otherwise valid forum selection clause. Moreover, elsewhere in the opposition, plaintiff expressly states that, for purposes of this motion, he is not arguing that the forum selection clause was procured by fraud. (Opp. at 16, n.5.) Accordingly, plaintiff's argument that the forum selection clause is void under section 29(b) fails to persuade.

Next, the Court considers whether the forum selection clause is void under California Corporations Code section 25701, which provides that "[a]ny condition, stipulation or provision purporting to bind any person acquiring any security to waive compliance with any provision of this law or any rule or order hereunder is void." [4]

Although plaintiff asserts that the forum selection clause is void under section 25701, plaintiff does not even attempt to explain how section 25701 applies, nor has he identified any provision in the conversion agreement that purports to waive MOMT's compliance with California law. (*See* Opp. at 15.) Moreover, in *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1090, n.7 (9th Cir. 2018), the Ninth Circuit held that because "many state and federal statutes," including section 25701, "include antiwaiver provisions, a rule that such provisions preclude enforcement of a forum-selection clause would contradict *Atlantic Marine*'s general rule that forum-selection clauses are enforceable except in the exceptional case." Accordingly, section 25701 does not render the forum selection clause void.

---

[4] Plaintiff's opposition asserts that "[d]efendants' liability under California's securities laws is governed by Cal. Corp. Code §§ 25401, 25501, 25504, and 25701." (Opp. at 20, n.7.) The Court notes, however, that the FAC does not reference section 25701.

Thus, the Court finds that the forum selection clause is not void under section 29(b) of the Securities Exchange Act or section 25701 of the California Corporations Code. Because plaintiff offers no other bases on which to find the forum selection clause void, the Court finds that the forum selection clause is valid.

**B.      Enforceability of Forum Selection Clause**

Next, the Court must consider whether "extraordinary circumstances" warrant overriding the valid forum selection clause contained in the conversion agreement.[5]

Plaintiff argues that such "extraordinary circumstances" exist in this case. Specifically, plaintiff avers that enforcement of the forum selection clause would be unreasonable based on the second and third *M/S Bremen* factors, namely, that transferring this case would deprive plaintiff of his day in court and contravene California public policy. The Court considers each of these arguments in turn.[6]

*1.      Deprivation of Day in Court*

Enforcement of a forum selection clause is unreasonable if "trial in the contractual forum will be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18. The Ninth Circuit has held that this exception to the default rule favoring enforcement of a forum selection clause is "difficult to satisfy." *Sun*, 901 F.3d at 1091. Indeed, where the parties have agreed to a forum selection clause, they "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* (quoting *Atl. Marine*,

_____

[5] Defendants argue, and plaintiff does not dispute, that plaintiff's claims in this action fall within the scope of the forum selection clause. The Court agrees. The forum selection clause in the conversion agreement provides that the parties submit to the exclusive jurisdiction of state and federal courts in Texas for resolving "any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein." (FAC, Ex. 11, ¶ 7.1.) Here, plaintiff's claims, which arise out of his investment in MOMT, bear a sufficiently close "connection" to the conversion agreement. Accordingly, the forum selection clause, if valid and enforceable, applies to this dispute.

[6] Plaintiff does not contest the enforceability of the forum selection clause based on the first *M/S Bremen* factor, that is, fraud or overreaching. (Opp. at 16, n.5.) Thus, the Court need not and does not consider this factor here.

571 U.S. at 64).  Accordingly, a court must enforce a valid forum selection clause unless "the contractually selected forum affords the plaintiffs *no remedies whatsoever*."  *Id*. (citing *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 774 (5th Cir. 2016)) (emphasis supplied).  Notably, "[i]t is the *availability* of a remedy that matters, not predictions of the likelihood of a win on the merits."  *Id*. (quoting *Weber*, 811 F.3d at 774) (emphasis in original).

Plaintiff argues that transferring this action to the Northern District of Texas would effectively deprive him of his day in court for four reasons.

*First*, plaintiff contends that his physical disability and deteriorating health render him unable to travel to Texas for trial.  (Opp. at 18.)  Plaintiff argues that if he cannot testify in person, the jury will not be able to "appreciate his vulnerability and credibility, and thus be moved to issue a just and substantial award in his favor."  (*Id*.)  According to plaintiff, this would deprive him of a full and fair hearing.  (*Id*.)

The Ninth Circuit has recognized that physical limitations may cause a plaintiff to be deprived of his day in court ***when combined with*** evidence of plaintiff's financial limitations.  *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1143 (9th Cir. 2004); *see also Pratt v. Silversea Cruises, Ltd.*, No. C 05-0693 SI, 2005 WL 1656891, *3 (N.D. Cal. July 13, 2005) ("*Murphy* and the weight of persuasive authority from this district and other jurisdictions suggest that neither severe physical limitation nor economic hardship alone is generally enough."); *Lentini v. Kelly Servs., Inc.*, No. C17-03911 WHA, 2017 WL 4354910, at *3 (N.D. Cal. Oct. 2, 2017) (same).

Here, plaintiff has presented persuasive evidence of his difficult medical history, including evidence regarding the seriousness of his disability and its effect on his mobility.  He has not, however, offered sufficient evidence of financial hardship.  Indeed, the only such evidence offered by plaintiff is a single allegation in the FAC asserting that defendants' conduct caused plaintiff to "lose his entire life's savings and hundreds of thousands [of] dollars in profits."  (FAC ¶ 15.)  However, "[s]pecific allegations are necessary to show that enforcement of a forum-selection clause would cause the sort of inconvenience which would deprive a party of their day in court."  *Lentini*, 2017 WL 4354910, at *3.  Plaintiff does not elaborate on his current financial situation, including whether he lacks any income or financial assistance that might otherwise relieve some of

the difficulty of litigating the case in Texas. Accordingly, plaintiff has not met his burden of showing that enforcement of the forum selection clause would deprive him of his day in court under *Murphy*. *See Pratt*, 2005 WL 1656891 at *4 (granting motion to transfer where 83-year-old plaintiff had physical disabilities that made her unable to travel but did not claim any financial hardship).

Moreover, even if plaintiff's physical limitations and financial situation render him unable to travel to Texas, the Court is not persuaded that plaintiff would be deprived of his day in court. The availability of electronic filing and video and teleconferencing technology limits the need for travel by the parties. *See Holck v. Bank of New York Mellon Corp.*, 769 F. Supp. 2d 1240, 1252 (D. Haw. 2011) (plaintiff's concerns regarding inability to travel were "mitigated by the fact that many aspects of the lawsuit can be handled by teleconference and that Plaintiff's deposition can be taken in Hawaii if necessary"). Here, for example, defendants expressly state that they will not object to taking plaintiff's deposition at his elder care facility in San Francisco. (Mot. at 10; Dkt. No. 65 ("Reply") at 5.)

Further, plaintiff does not assert that he would be unable to recover unless he is present for trial in Texas. Rather, plaintiff argues that in-person testimony would bolster the vulnerability and credibility of his testimony, moving the jury to award higher damages. (Opp. at 18.) However, "[t]o meet the heavy burden required to overcome the presumption that a forum selection clause is valid, plaintiff must show that it is an impossibility for her to try her case, not simply a less convenient or effective means of doing so." *Pratt*, 2005 WL 1656891, at *4; *see also Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 11 (2nd Cir. 1995) (rejecting plaintiff's argument that disability and expense would deprive him of his day in court, noting that "a plaintiff may have his 'day in court' without ever setting foot in a courtroom"). Plaintiff has not alleged such an impossibility here.

*Second*, plaintiff argues that transfer to Texas would deprive him of his day in court because he would be unable to subpoena Mr. Sahu, a "critical non-party witness." (Opp. at 18-19.)

Pursuant to Fed. R. Civ. P. 45(c)(1)(A), a district court may compel a witness to attend a

trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Mr. Sahu resides and works in San Francisco, California, which is more than 100 miles from the Northern District of Texas. (Opp. at 18-19; Dkt. No. 59, ¶ 3.) As such, plaintiff is correct that the Texas court may not exercise subpoena power over Mr. Sahu under Rule 45.

The inability to compel attendance of unwilling non-party witnesses may be a factor weighing against transfer. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). However, plaintiff does not assert that Mr. Sahu would be *unwilling* to testify unless subpoenaed, nor does Mr. Sahu make such an assertion in his declaration. Indeed, the fact that Mr. Sahu provided a declaration in support of plaintiff's opposition to this motion suggests there is at least some possibility that he may be willing to travel to Texas to testify in this case. Moreover, even if Mr. Sahu is unwilling to appear at trial and cannot be subpoenaed by the Texas court, plaintiff may depose Mr. Sahu and use the deposition testimony and video at trial. Thus, although the inability to compel in-person testimony from Mr. Sahu may present challenges to plaintiff's litigation of this action, those challenges are insufficient to justify a refusal to enforce the forum selection clause.

*Third*, plaintiff argues that he would be deprived of his day in court if the case was transferred to Texas because he would be unable to recover under California's elder abuse statute, which provides for recovery of treble damages. (Opp. at 20, citing Cal. Civ. Code §§ 3345, 3294 and Cal. Wel. & Inst. § 15657.)

As an initial matter, insofar as plaintiff's argument relates to choice-of-law issues, that is, whether the Texas court would apply California law, such issues are not relevant to the Court's decision on this motion. Said another way, a decision on whether to enforce a forum selection clause determines where a case is heard, and is separate and distinct from a determination of which law to apply. *See Besag v. Custom Decorators, Inc.*, No. CV08-05463 JSW, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009) ("Thus, a party challenging enforcement of a forum selection clause may not base its challenge on choice of law analysis."); *Rowen v. Soundview Commc'n, Inc.*, No. 14-CV-5530-WHO, 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015) ("Courts in the Ninth Circuit have generally agreed that the choice-of-law analysis is irrelevant to

determining if the enforcement of a forum selection clause contravenes a strong public policy.").

Rather, any choice-of-law disputes are to be decided by the transferee court. *Cooper v. Slice Techs., Inc.*, No. 17-CV-02340-LB, 2017 WL 4071373, at *3 (N.D. Cal. Sept. 14, 2017).[7]

Moreover, regardless of whether California law or Texas law applies, plaintiff would not be barred from seeking recovery based on an underlying theory of elder abuse. If the transferee court found that California law applied, the Texas court would be fully capable of interpreting and applying this state's laws. *See Atl. Marine,* 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."); *see also In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*, 111 F. Supp. 3d 79, 87 (D. Mass. 2015) (considering motion to dismiss for failure to state a claim under California elder abuse statute); *In re Lincoln Nat'l COI Litig.*, 269 F. Supp. 3d 622, 647 (E.D. Pa. 2017) (same). Conversely, if the transferee court found that Texas law applied, plaintiff would not be completely deprived of an opportunity to recover. Texas law permits recovery for breaches of fiduciary duty and fraud of the type alleged in the complaint. *See Lohr v. Gilman*, No. 3:15-CV-1931-BN, 2018 WL 6199290, at *5-7 (N.D. Tex. Nov. 28, 2018) (awarding damages for violations of Texas Blue Sky Laws, statutory fraud, and common law fraud arising out of scheme to fraudulently induce plaintiff into investing in "sham" enterprises). Further, plaintiff could still maintain his federal causes of action. In any event, "the Ninth Circuit has held that the loss of a claim is insufficient to invalidate a forum selection clause based on public policy grounds." *Besag*, 2009 WL 330934, at *3 (citing *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1997)).

The Ninth Circuit also has held that a transferee forum's remedies need not be identical to a transferor forum's remedies. *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 723 (9th Cir. 1999). Rather, transfer is inappropriate only if the transferee court affords plaintiffs "no remedies whatsoever." *Sun*, 901 F.3d at 1091-92. "[T]he fact that *certain types of remedies* are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in

---

[7] The provision in the conversion agreement that contains the forum selection clause also includes a clause designating Texas law as applicable. However, as explained herein, whether this choice-of-law clause is valid and enforceable does not bear on the issue of transfer.

that forum that would allow the plaintiff to seek some relief." *Id.* at 1092 (quoting *Weber*, 811 F.3d at 774) (emphasis in original). Despite the unavailability of treble damages under Texas law, plaintiff does not and cannot contend that actual damages would not be available if another state's laws applied. As such, plaintiff has not established that recovery under Texas law would be so insufficient as to effectively deprive him of his day in court. *See Cooper*, 2017 WL 4071373, at *4 (rejecting argument that transfer violated public policy even though New York's privacy laws did not provide for treble damages, unlike California law); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2014 WL 1047207, at *4 (N.D. Cal. Mar. 13, 2014) ("despite the unavailability of treble damages, Sharp maintains that actual damages could be available to it, which does not evince a lack of reasonable recourse in the Japanese court system"); *Sun*, 901 F.3d at 1093 ("Given that the Suns retain remedies under Washington securities law, California securities law, and California common law, they have not carried their heavy burden to show that enforcement of the forum-selection clause would deprive them of their day in court.").[8]

*Fourth*, and finally, plaintiff argues that transfer of this case would deprive him of his day in court because he would face difficulties finding an attorney in Texas willing to work on a contingency basis. Specifically, plaintiff contends that if the case is transferred, he would be less likely to recover substantial damages because of his inability to testify in person, subpoena Mr. Sahu, and obtain treble damages under the California elder abuse statute, and accordingly, there would be less incentive for a contingency attorney to take his case. (Opp. at 19.)

Plaintiff's arguments do not persuade. Notably, plaintiff does not contend that his current attorney would not continue to represent him if the case was transferred to Texas. Moreover, plaintiff's argument regarding the difficulty of securing counsel in Texas is entirely speculative, and even if true, would not make litigation so gravely difficult as to render the forum selection

---

[8] Plaintiff contends that enforcement of the forum selection clause in this case would send a message to companies that they can avoid answering for wrongdoing perpetrated on the elderly by including a forum selection clause in their contracts that designates forums most favorable to the companies. (Opp. at 20.) Although the Court acknowledges this risk, the law protects against such an outcome, in part, by providing that forum selection clauses are not enforceable in cases of fraud, undue influence, or overreaching. Plaintiff does not argue any of these exceptions apply here. Moreover, as explained herein, defendants may be held to account by other states' courts applying California law or similar laws of other states.

clause unreasonable.

In sum, while the Court is sympathetic to plaintiff's health condition and the difficulties of litigating in another state, plaintiff has not met the "heavy burden" of demonstrating that enforcement of the forum selection clause would deprive him of his day in court.[9]

### 2. California's Public Policy Interests

The Court next must determine whether enforcement of the forum selection clause would contravene California public policy. Consideration of public interest factors alone will "rarely defeat" a forum selection clause. *Atl. Marine*, 571 U.S. at 64. Absent a total foreclosure of remedy in the transferee forum—which, as previously explained, does not exist here—a forum selection clause is only unreasonable when it contravenes a policy *specifically related to venue*. *See Jones*, 211 F.3d at 497-498.

Plaintiff avers that California has a strong public policy interest in ensuring the honesty and integrity of its securities markets and transactions, protecting its vulnerable elderly citizens, and ensuring its citizens have the right to a jury trial and are afforded their day in court under the due process clause. (Opp. at 22-23.)

None of these purported policy interests is specifically tethered to venue, however. *See Lentini*, 2017 WL 4354910, at *3-4 (finding that California's interest in full and prompt payment of earned wages under its labor code had no effect on the validity of the forum selection clause); *Voicemail Club, Inc. v. Enhanced Servs. Billing, Inc.,* No. C 1202189 SI, 2012 WL 4837697, at *3 (N.D. Cal. Oct. 10, 2012) (finding that enforcement of forum selection clause would not contravene public policy under California Civil Code sections 1542, 1668, and 1717 because "the Court only examines public policy as it relates to venue"); *Besag,* 2009 WL 330934, at *3-4 (N.D. Cal. Feb. 10, 2009) (refusing to consider a state's public policy interest in "providing damages to employees who have been deprived of their meal and/or rest periods" because plaintiff "present[ed] no evidence that the public policy underlying her claim expressly related to

---

[9] Further, while the Court transfers the action, it is amendable to working with the sister court in Texas should any video-conferencing be required to assist plaintiff.

venue[.]”).

Moreover, as to California's interest in enforcing its securities and elder abuse laws, plaintiff is free to pursue these claims in the Texas court, which could competently apply California law. *Atl. Marine,* 571 U.S. at 67; *see also Cooper v. Slice Techs., Inc.*, No. 17-CV-02340-LB, 2017 WL 4071373, at *5 (N.D. Cal. Sept. 14, 2017) (“California's interest in enforcement of its laws . . . does not defeat the enforcement of the forum-selection clause. The claims are mostly federal, and the district court in New York is capable of applying California law.”); *Bay Women's Health, Inc. v. gloStream, Inc.,* No. C 14–00712 WHA, 2014 WL 1618382, at *3 (N.D. Cal. April 21, 2014) (finding transfer was appropriate where “the transferee court [could] decide to apply the substantive law sought by plaintiffs” and plaintiffs “failed to identify a fundamental policy underlying California's Unfair Competition Act that relate[d] to *venue.*”) (emphasis in original).[10]

With respect to plaintiff's argument that California has a public policy interest in affording its citizens a jury trial, plaintiff contends that Texas courts “undoubtedly would enforce the jury waiver provision” in the conversion agreement. (Opp. at 23.) Whether to enforce the jury waiver provision, however, is a separate issue from the enforceability of the forum selection clause and is a question best left to the transferee court. *See Balducci v. Congo, Ltd.*, No. 17-CV-04062-KAW, 2017 WL 4176464, at *6 (N.D. Cal. Sept. 21, 2017) (rejecting plaintiff's public policy arguments, which “focus[ed] on the choice of law provision and the jury trial waiver, rather than the forum selection clause.”). Moreover, the Court is not persuaded that plaintiff would be denied his full due process rights if the case were transferred to federal court in Texas.

In addition, although California may have an interest in providing its residents with a forum for redressing injuries, where “defendants are not California corporations, California has

---

[10] Plaintiff argues that California has an interest in enforcing the anti-waiver provision in its securities laws, which plaintiff contends was enacted “to ensure [California's] securities laws would apply here.” (Opp. at 22, citing Cal. Corp. Code § 25701.) The Court is not persuaded that this provision is so unique that a Texas court could not competently adjudicate issues concerning the provision. Moreover, as previously explained, the Ninth Circuit has expressly held that such anti-waiver provisions do not bar enforcement of valid forum selection clauses. *Sun*, 901 F.3d at 1090, n.7.

14

little interest in keeping the litigation in this state to deter future wrongful conduct." *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at \*5 (N.D. Cal. Apr. 11, 2014) (quoting *Guimei v. Gen. Elec. Co.,* 172 Cal.App. 4th 689, 703 (2009)); *see also In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1122 (N.D. Cal. 2019) (enforcing forum selection clause designating Delaware as proper forum and noting that defendant was Delaware corporation). Here, MOMT is a Texas corporation, and each of the individual defendants is a citizen of Texas. (FAC ¶¶ 21-25.) Therefore, Texas' interest in deterring wrongful conduct by its own citizens is at least as great as, if not greater than, California's interest in adjudicating claims against out-of-state defendants in its courts.

Thus, the Court finds that California's public policy interests do not support overriding the forum selection clause. For this reason, and because transfer of this case would not deprive plaintiff of his day in court, the Court finds that the forum selection clause is enforceable and transfer to the Northern District of Texas is warranted.

### C.       Court's Discretion to Retain the Case

Finally, the Court considers whether it should exercise its discretion, pursuant to section 1404(a), to retain jurisdiction over this matter notwithstanding the validity and enforceability of the forum selection clause.

Plaintiff argues that the Court should decline to transfer this case, emphasizing that much of the alleged conduct occurred in California. (Opp. at 12-13.) In support of this argument plaintiff points out that 28 U.S.C. section 1391(b) expressly permits a civil action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." Plaintiff contends that under *Atlantic Marine*, once venue is determined to be authorized under section 1391, it cannot be the "wrong" venue. (*Id*. at 13.)

Plaintiff misconstrues *Atlantic Marine*, which expressly held that the transfer of an action pursuant to section 1404(a) is not conditioned on the initial forum being "wrong." *Atl. Marine*, 571 U.S. at 59. Rather, what matters for purposes of deciding this motion is that the parties agreed to a forum selection clause designating the Northern District of Texas as the proper venue for

United States District Court
Northern District of California

litigation.  Thus, even assuming a substantial part of the conduct at issue occurred in this district, the forum selection clause must be enforced except under "extraordinary circumstances."  *Id*. at 62.  Such extraordinary circumstances do not exist here.[11]

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to transfer to the United States District Court for the Northern District of Texas.[12]  The Clerk is directed to transfer the file.

**IT IS SO ORDERED.**

Dated:  June 13, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[11]  Plaintiff cites to *Mann v. Punchkick Interactive, Inc.*, No. 4:15-CV-05981-YGR, 2016 WL 1701778 (N.D. Cal. Apr. 28, 2016) for the proposition that this Court should retain jurisdiction because venue is proper in this district.  In *Mann*, however, this Court *granted* a motion to transfer where the parties' contract included a forum selection clause.  The Court notes that *Mann* turned on issues of judicial estoppel that are not relevant here, and thus, the case is of limited usefulness in deciding the present motion.  However, insofar as *Mann* is relevant, it contradicts plaintiff's position and weighs in favor of the enforcement of the forum selection clause.

[12]  Plaintiff seeks judicial notice of nine exhibits, including MOMT's public securities filings, press releases, and historical publicly-traded stock prices, offered in support of its opposition.  (Dkt. No. 60.)  The Court finds that these exhibits go to the merits of plaintiff's claims and are not directly relevant to the Court's analysis on the transfer motion.  Accordingly, plaintiff's request for judicial notice is **DENIED** as moot.